IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD B. GARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 3238 |
| | ) | |
| CHICAGO MERCANTILE EXCHANGE, | ) | Hon. Paul E. Plunkett |
| CHICAGO BOARD OF TRADE, CHICAGO | ) | |
| BOARD OF OPTIONS EXCHANGE, and | ) | |
| ONE CHICAGO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING**

TO:   All Attorneys of Record (See Attached Service List)

PLEASE TAKE NOTICE that on Friday, August 13, 2004, we filed with the U.S. Clerk for the Northern District of Illinois the Answer, Affirmative Defenses, and Counterclaims of Chicago Mercantile Exchange, a copy of which is attached herewith.

Dated: August 13, 2004                             CHICAGO MERCANTILE EXCHANGE


                                                   BY: _____
                                                        One of Its Attorneys

Wendi E. Sloane
Steven J. Yatvin
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive
Suite 2700
Chicago, Illinois 60606
(312) 984-3100

Craig D. Diviney
Devan V. Padmanabhan
Sri K. Sankaran
Dorsey & Whitney LLP
50 South Sixth Street, #1500
Minneapolis, MN 55402
(612) 340-2600

242878_1.DOC

## SERVICE LIST

### Garber v. Chicago Mercantile Exchage, et al.

Lee F. Grossman
Jeffrey M. Drake
GROSSMAN & FLIGHT, LLC
20 North Wacker Drive
Suite 4220
Chicago, IL 60606

Attorneys for Plaintiff
Howard B. Garber

Richard J. Hoskins
Thomas B. Quinn
David C. Scott
Schiff & Hardin LLP
6000 Sears Tower
Chicago, IL 60606

Tel: (312) 258-5500
Fax: (312) 258-5600
Attorneys for Defendant,
Chicago Board Options Exchange

Floyd R. Nation
Thomas Miller
Tyler T. Van Houtan
Howrey Simon Arnold & White
750 Bering Drive
Houston, TX 77057

Tel: (713) 787-1400
Fax: (713) 787-1440
Attorneys for Defendant,
Chicago Board of Trade

Edward M. O'Toole
Michael Lindsay
Howrey Simon Arnold & White
312 North Clark Street, #3400
Chicago, IL 60610

Tel: (312) 595-1239
Fax: (312) 595-2250
Attorneys for Defendant,
Chicago Board of Trade

Robert E. Browne
Timothy M. Morella
Maurice E. Finnegan, III
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Chicago, IL 60602

Tel: (312) 269-8000
Fax: (312) 269-1747
Attorneys for Defendant,
Once Chicago, LLC

Craig D. Diviney
Devan V. Padmanabhan
Sri K. Sankaran
Dorsey & Whitney LLP
50 South Sixth Street, #1500
Minneapolis, MN 55402

Tel: (612) 340-2600
Fax: (612) 340-2868
Attorneys for Defendant,
Chicago Mercantile Exchange

241759_1

Jerrold E. Salzman
James T. Malysiak
Richard P. Campbell
Freeman, Freeman & Salzman, P.C.
401 North Michigan Avenue, #3200
Chicago, IL 60611

Tel: (312) 223-5100
Fax: (312) 822-0870
Attorneys for Defendant,
Chicago Mercantile Exchange

241759_1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD B. GARBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 3238 |
| ) | |
| CHICAGO MERCANTILE EXCHANGE, ) | Judge Paul E. Plunkett |
| CHICAGO BOARD OF TRADE, CHICAGO ) | |
| BOARD OF OPTIONS EXCHANGE, and ) | Magistrate Judge Edward Bobrick |
| ONE CHICAGO, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
### OF DEFENDANT CHICAGO MERCANTILE EXCHANGE

Defendant Chicago Mercantile Exchange ("CME") for its Answer to the Complaint, admits, denies, and alleges as follows. To the extent not expressly admitted or qualified herein, each and every allegation of the Complaint is denied.

### ANSWER

1. Howard B. Garber ("Garber") is an individual residing at 2305 N. Commonwealth Avenue, Chicago, Illinois.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 1 and therefore denies them.

2. Upon information and belief, the Chicago Mercantile Exchange ("CME") is a Delaware corporation having its principal place of business at 30 S. Wacker Drive, Chicago, Illinois.

**ANSWER:** CME admits it is a Delaware corporation. CME furthers states that its correct name is Chicago Mercantile Exchange, Inc., and that its correct address is 20 S. Wacker Drive, Chicago, Illinois.



3. Upon information and belief, the Chicago Board of Trade ("CBOT") is a Delaware corporation having its principal place of business at 141 West Jackson Blvd., Chicago, Illinois.

**ANSWER:** Admitted.

4. Upon information and belief, the Chicago Board Options Exchange ("CBOE") is a Delaware corporation having its principal place of business at 400 South LaSalle Street, Chicago, Illinois.

**ANSWER:** Admitted.

5. Upon information and belief, One Chicago, LLC ("One Chicago") is a Delaware corporation having its principal place of business at 141 West Jackson Blvd., Suite 2208A, Chicago, Illinois.

**ANSWER:** Admitted.

6. This Court has jurisdiction over each of the Defendants pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1338.

**ANSWER:** CME denies the allegations of Paragraph 6 because 28 U.S.C. §§ 1332 and 1338 confer jurisdiction over civil actions, not defendants. CME states that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338.

7. Venue is proper in this judicial district for each of the Defendants pursuant to 28 U.S.C. §§ 1391 (b) and (c).

**ANSWER:** Admitted.

8. Garber was born, raised, and currently resides in the Chicago area.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 8 and therefore denies them.

9. From 1972-1976 Garber occasionally traded soybeans at the CBOT while working full-time in the retail fur business.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 9 and therefore denies them.

2

10. In 1976, Garber purchased a seat at the CME in the International Monetary Market where he traded gold and numerous currencies on a full-time basis on the floor at the CME.

**ANSWER:** CME admits that in 1976, Garber purchased a seat at the CME, but CME lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and therefore denies them.

11. In the early 1980s, Garber began trading soybean futures, treasury bonds, and stock options on the floors of the CBOT and CBOE.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 11 and therefore denies them.

12. Starting around 1984 and throughout the remainder of the 1980s and the 1990s, Garber, a computer enthusiast, stopped trading on the floor of the exchanges. Rather he used computers to receive last trade price quotes from the floor of the exchanges and used these price quotes to telephone traders on the floor of the exchanges to complete his transactions. Also, throughout the 1990s, Garber ran his own investment advising business.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 12 and therefore denies them.

13. During the three decades as a trader at the Defendants' exchanges, Garber gained an intimate knowledge of the futures and options industry. While trading at the CBOT, CBOE, and CME, he realized that there was a need for a system which would increase the opportunities for a trader to buy and sell in many of the commodities he traded. That is, there was a need to create liquidity in many markets.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 13 and therefore denies them.

14. One problem that Garber experienced at the Defendants' exchanges was the limited number of traders trading a certain commodity. This increased the spread between the purchase price and the sell price and created greater volatility, both combining to increase the overall costs of trading.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies them.

15. Combining his passion for computers and for trading, Garber invented a unique system and method for electronically trading commodities which would overcome these problems. On June 3, 1997, Garber filed a patent application, which on October 5, 1999 issued as United States Patent No. 5,963,923 ("the '923 Patent") entitled *System and Method for Trading Having a Principal Market Maker*. Garber is the sole owner of the '923 Patent. The '923 Patent is attached as Exhibit A.

**ANSWER:** CME admits that an incomplete copy of U.S. Patent No. 5,693,923 ("the '923 Patent") was attached to the Complaint, that the patent states on its face the title *System and Method for Trading having a Principal Market Maker*, and that the patent states on its face that it was issued on October 5, 1999, on an application filed on June 3, 1997. CME states that the '923 Patent speaks for itself, and denies the remaining allegations contained in Paragraph 15.

16. The '923 Patent is directed toward a system and method of trading commodities using a computerized or electronic "market maker".

**ANSWER:** CME denies the allegations of Paragraph 16 and states that the '923 Patent speaks for itself.

17. A market maker can create and maintain a market (i.e. creates a buy and sell price) in a particular commodity by being willing to buy a particular commodity at a specified price and sell the particular commodity at a specified price. This creates liquidity in that commodity by allowing any trader to buy or sell that particular commodity at any time. For example, a market maker sets a bid (offer to buy) price and offer (offer to sell) price and has an obligation to buy and sell at that price. Thus, a trader can always buy from the market maker or sell to the market maker a particular commodity. Using a market maker creates greater liquidity and less volatility ultimately lowering the overall cost of trading.

**ANSWER:** CME denies that Paragraph 17 is a fair, accurate or complete description of a market maker or the impact of a market maker on liquidity and/or volatility. To the extent Paragraph 17 purports to characterize the '923 Patent, CME states that the Patent speaks for itself.

18. Because the market maker must buy or sell after it establishes the bid/offer price, it is advantageous for the market maker to have this ability to automatically transfer this risk to a different market maker. For example, if the market maker is continually buying a certain commodity future because all of the traders want to sell, the price of the commodity future may continuously decline—thus the market maker will receive lower-priced commodity futures that

4

he is obligated to buy from the traders. To protect itself against this price drop, i.e. hedge, the market maker can make a second trade buying an option contract—the right to sell the commodity future at a certain price, i.e. a higher price—thus offsetting the previous purchase of the lower priced commodity future. The market maker can make this second trade through a second market maker. This almost instantaneous transfer of risk via computer had never been accomplished before Garber's invention.

**ANSWER:** CME denies that Paragraph 18 is a fair, accurate or complete description of a market maker or the description of markets. CME denies that inter-market hedging via a computer had never been accomplished before Garber's invention. To the extent Paragraph 18 purports to characterize the '923 Patent, CME states that the Patent speaks for itself.

19. The '923 Patent results in the electronic market maker increasing trading volume, reducing the volatility and the size of the spread between the bid and offer while minimizing risk to the market maker, all combining to create a more efficient trading environment.

**ANSWER:** CME denies the allegations of Paragraph 19.

20. The Defendants own and operate commodity future and option exchanges.

**ANSWER:** CME is a designated commodity exchange. CME lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and therefore denies them.

21. As an active trader in the options and futures industry for over 20 years, Garber approached the Defendants to implement his invention of an electronic market maker in order to solve the problems he saw with the futures and options trading exchanges.

**ANSWER:** CME denies the allegations of Paragraph 21.

22. On numerous occasions, the Defendants met with Garber and requested detailed information about his invention. However, they later told him they were not interested. Subsequently, the Defendants implemented and are currently using his invention as claimed in the '923 Patent.

**ANSWER:** To the extent the allegations of Paragraph 22 are directed at CME, CME denies them. To the extent the allegations of Paragraph 22 are directed at other defendants, CME

5

lacks information sufficient to form a belief as to the truth of those allegations and therefore denies them.

23. On December 17, 1996, Garber met with Pat Arbor, then CBOT chairman, to discuss Garber's proposal for an electronic market making system ("PMM"). Garber sent a follow-up letter summarizing the December 17th meeting to which he received no reply.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 23 and therefore denies them.

24. On October 10, 1997, Garber telephoned Richard Sandor, a vice president at the CBOT, to discuss his PMM invention. On the advice of Sandor, Garber telephoned and left a message for Harold Lavender, then governor at the CBOT, to discuss his PMM invention. Garber received no response.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore denies them.

25. On October 16, 1997, Garber met with Henry Mlynarski, then CEO of the Chicago Board Brokerage at the CBOT, to discuss Garber's pending patent application and proposal for implementing the PMM invention at the CBOT. Mlynarski told Garber that he would read the proposal and get back to him. On November 4, 1997, Mlynarski rejected Garber's proposal.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and therefore denies them.

26. On December 17, 1997, Garber spoke with John Harding, then vice president of product development and research at the CBOT, and they discussed Garber's PMM invention. Harding told Garber that the CBOT was not interested.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 26 and therefore denies them.

27. Upon information and belief, the CBOT is now using a PMM system as claimed in the '923 Patent in at least the following products and/or services: the 2, 5, and 10 year US Treasury Note Futures, the 30-year US Treasury Bonds, the 5 and 10 year Interest Rate Swap Futures, the 30-day Federal Fund Futures, the Dow Jones Industrial Average Futures and various E-mini products.

6

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 27 and therefore denies them.

28. In July 1997, Garber met with Yra Harris, Bill Shepard, and Jim Oliff, all board governors at the CME, to discuss his PMM invention.

**ANSWER:** CME denies that Garber met with any of its directors to discuss any invention by Garber. CME lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 28, and therefore denies them.

29. On separate occasions during August 1997, Garber met with then CME Chairman, Jack Sander and CME board member, Jim Oliff to discuss Garber's PMM invention and pending patent application. Garber gave a copy of his white paper to Sander which summarized his invention.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29 and therefore denies them.

30. On September 17, 1997, Garber spoke with Fred Arditti, an economist at the CME, regarding his PMM invention. During the meeting, Arditti said neither he nor anyone else at the CME would have time for Garber's PMM invention.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 30 and therefore denies them.

31. On September 24, 1997, Garber and his attorney met with the CME's Bill Shepard and his attorney to discuss Garber's invention and its suitability to the CME's newly introduced product, the E-mini. Garber's PMM invention was again rejected.

**ANSWER:** CME admits there was a meeting. CME denies that the purpose or subject of the meeting was to discuss any purported invention of Garber's and/or its suitability to CME's E-mini product line. CME lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31 and therefore denies them.

32. On February 24, 1998, Garber met with the CME's Agriculture Oversight Committee ("AOC") to discuss AOC's desire to use Garber's PMM invention in its dairy contracts. Present at this meeting were Bob Prossi, the Chairman of the committee, and

7

committee members Tim Brennan, Joel Greenberg, Joe Gressel, Bill Shepard, and Laurie Altinger. They rejected Garber's PMM invention.

**ANSWER:** CME admits that Garber was at a meeting of a subcommittee of the AOC and admits that Bob Prossi, Tim Brennan, Joel Greenberg, Joe Gressel, Bill Shepard, and Lori Aldinger were present. CME denies the remaining allegations of Paragraph 32.

33. On February 25, 1998, Garber received a telephone call from Scott Gordon, then CME Chairman to discuss his PMM invention. Gordon informed Garber that he was reorganizing the CME's committees to give them more flexibility and that Garber should contact him in mid April of 1998.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and therefore denies them.

34. Accordingly, on May 6, 1998, Garber mailed a copy of his PMM invention to Scott Gordon and on May 24, 1998, Garber spoke with Gordon regarding his PMM invention. He told Garber to write a letter summarizing their conservation *[sic]* so that he could discuss Garber's PMM invention at a high level meeting.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and therefore denies them.

35. Garber wrote the summarizing letter to Gordon and in response thereto, Rick Killcollum, then CEO of the CME, called Garber to inform him that no one at the CME was interested in his PMM invention.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 35 and therefore denies them.

36. Upon information and belief, the CME is now using a PMM system as claimed in the '923 Patent in at least the following products and/or services: Eurodollar futures and options contracts, and various E-mini products.

**ANSWER:** Denied.

37. On October 9, 1996, Garber met with Bill Floersch, then Vice Chairman of the CBOE, and Joe Levin, head of new products at the CBOE, to discuss Garber's PMM invention and its use at the CBOE. Levin told Garber that he would call after the appropriate CBOE personnel discussed Garber's PMM invention. Levin, ultimately rejected Garber's PMM invention.

8

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 37 and therefore denies them.

38. On November 12, 1996, Garber met with the CBOE's New Products committee, including Angelo Carvello, then a trader at the CBOE, where Garber presented his PMM invention. Again, the CBOE, by silence, rejected Garber's PMM invention.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 38 and therefore denies them.

39. Upon information and belief, the CBOE is now using a PMM system as claimed in the '923 Patent in at least the following product and/or service: Volatility Index (VIX) Futures.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 39 and therefore denies them.

40. One Chicago is owned equally by each of the three other defendants, CBOT, CME, and CBOE.

**ANSWER:** Denied.

41. Upon information and belief, One Chicago is using a PMM system as claimed in the '923 Patent in its single stock futures contracts trading exchange.

**ANSWER:** CME lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 41 and therefore denies them.

42. Garber repeats and realleges, and incorporates by reference all the previous allegations of paragraphs 1-41 of this Complaint as specifically set forth herein.

**ANSWER:** CME realleges and incorporates by reference Paragraphs 1 through 41 of this Answer.

43. The Defendants *[sic]* use of a computerized market maker in futures and commodities trading is an infringement of the '923 Patent in violation of 35 U.S.C. § 271 (a), (b) and/or (c).

9

**ANSWER:** To the extent the allegations of Paragraph 43 are directed at CME, CME denies them. To the extent the allegations of Paragraph 43 are directed at other defendants, CME lacks information sufficient to form a belief as to the truth of those allegations and therefore denies them.

44. Upon information and belief, Defendants were aware of the existence of the '923 Patent prior to making, using, and selling a computerized market maker, but nonetheless have infringed the '923 Patent without a reasonable basis for believing in good faith that they had a right to infringe the '923 Patent. Thus, the Defendants' infringement of the '923 Patent has been willful.

**ANSWER:** To the extent the allegations of Paragraph 44 are directed at CME, CME denies them. To the extent the allegations of Paragraph 44 are directed at other defendants, CME lacks information sufficient to form a belief as to the truth of those allegations and therefore denies them.

## AFFIRMATIVE DEFENSES

1. CME has not infringed, contributed to the infringement of, or actively induced infringement of, any claim of the '923 Patent.

2. CME believes that reasonable opportunity for discovery and investigation is likely to produce evidence that one or more claims of the '923 patent is invalid for failure to comply with the requirements the patent laws of the United States, 35 U.S.C. § 101, et seq.

3. The claims of the '923 Patent, if construed to cover systems and methods employed by CME, are invalid for failure to comply with the requirements of the patent laws of the United States, 35 U.S.C. § 101, et seq.

4. Due to the doctrine of file wrapper estoppel, Garber is estopped from a claim construction that would cover CME's products and/or services that are or have been used by CME or any third party.

## COUNTERCLAIM

1. Chicago Mercantile Exchange ("CME") is a corporation organized under the laws of Delaware, with its principal place of business in Chicago, Illinois.

2. Howard B. Garber ("Garber") is, on information and belief an individual residing in Chicago, Illinois.

3. This Court has subject matter jurisdiction over this Counterclaim, pursuant to 28 U.S.C. §§ 2201, 2202, 1331 and 1338. A justiciable controversy exists between CME and Garber relating to the validity and infringement of U.S. Patent No. 5,693,923 ("the '923 patent"), in that Garber has filed suit accusing CME of infringing the '923 Patent.

4. Venue is proper in this District in that Garber resides in this District.

## COUNT I
## (DECLARATORY JUDGMENT OF NONINFRINGEMENT)

5. CME repeats and incorporates by references the allegations of Paragraphs 1 to 4 of this Counterclaim.

6. CME has not infringed, contributed to the infringement of, or actively induced the infringement of, any claim of the '923 Patent.

7. CME is entitled to a Declaratory Judgment that has not infringed, contributed to the infringement of, or actively induced the infringement of, any claim of the '923 Patent.

## COUNT II
## (DECLARATORY JUDGMENT OF INVALIDITY)

8. CME repeats and incorporates by references the allegations of Paragraphs 1 to 4 of this Counterclaim.

9. CME believes that reasonable opportunity for discovery and investigation is likely to produce evidence that one or more claims of the '923 patent is invalid for failure to comply

11

with the requirements the patent laws of the United States, 35 U.S.C. § 101, et seq. Accordingly, on information and belief, one or more claims of the '923 patent is invalid for failure to comply with the requirements the patent laws of the United States, 35 U.S.C. § 101, et seq.

10. The claims of the '923 Patent, if construed to cover systems and methods employed by CME, are invalid for failure to comply with the requirements the patent laws of the United States, 35 U.S.C. § 101, et seq.

11. CME is entitled to a Declaratory Judgment that one or more claims of the '923 Patent are invalid.

WHEREFORE, CME prays for relief as follows:

A. that Garber's Complaint be dismissed with prejudice;

B. a Declaratory Judgment that CME has not infringed, contributed to the infringement of, or actively induced the infringement of, any claim of the '923 Patent;

C. a Declaratory Judgment that all claims of the '923 Patent are invalid;

D. an award of CME's costs and attorney fees pursuant to 35 U.S.C. § 285; and

E. such other and further relief that the Court deems just and equitable.

CME demands a trial by jury on all counts.

Respectfully submitted,

Dated: August 13, 2004

CHICAGO MERCANTILE EXCHANGE

BY: _____
One of Its Attorneys

Wendi E. Sloane
Steven J. Yatvin
BARACK FERRAZZANO KIRSCHBAUM
 PERLMAN & NAGELBERG LLP

333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100

Craig D. Diviney
Devan V. Padmanabhan
Sri K. Sankaran
Dorsey & Whitney LLP
50 South Sixth Street, #1500
Minneapolis, MN 55402
(612) 340-2600

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served the foregoing Answer, Affirmative Defenses, and Counterclaim of Chicago Mercantile Exchange, by first class mail, upon all attorneys of record (see attached service list) on August 13, 2004.

_____
Steven J. Yatvin

242878_1.DOC